# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs March 6, 2012

## COURTENAY D. ROBERTSON v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-11-9     Roy B. Morgan, Jr., Judge**

No. W2011-01464-CCA-R3-PC  - Filed April 23, 2012

The petitioner, Courtenay D. Robertson, appeals the Madison County Circuit Court's denial of his petition for post-conviction relief attacking his jury convictions of attempt to commit second degree murder, aggravated arson, and felony evading arrest on the basis of ineffective assistance of counsel.  Following our review, we affirm the order of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ALAN E. GLENN, J., joined.

Mike Mosier, Jackson, Tennessee, for the appellant, Courtenay D. Robertson.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On direct appeal to this court, the petitioner claimed that the convicting evidence of aggravated arson was insufficient, that the dual convictions of aggravated arson and attempted second degree murder violated principles of double jeopardy, and that he received an excessive sentence.  This court affirmed the petitioner's convictions. *See State v. Courtenay Darrell Robertson*, No. W2009-01853-CCA-R3-CD (Tenn. Crim. App., Jackson, Nov. 18, 2010).

The victim of the defendant's crimes was Belinda Jones. *Id.*, slip op. at 2.  In the early morning hours of November 24, 2007, the victim appeared at the apartment door

of a neighbor; the victim had been burned on her face and chest and said, "Somebody call 911[;] he just set me on fire." *Id.* The neighbor spoke with the 911 operator and relayed the operator's questions to the victim and the victim's responses to the operator. The neighbor testified that the victim stated that the petitioner, her boyfriend, was responsible. The neighbor went to the victim's apartment and extinguished a fire in "a box burning under the table." *Id.*

An officer who responded within three minutes of the call described the victim as "'so badly disfigured . . . [that she] didn't look human.'" *Id.* The victim told the officer that the petitioner was responsible for her burns. In the victim's apartment, the officer found a box of compact discs and digital video discs that had been set on fire, a burned portion of a bra, and two bottles of rubbing alcohol, one capped and one uncapped. *Id.*, slip op. at 3.

The emergency room physician who treated the victim testified that she suffered second degree burns to her face, front and back of both arms, chest, and three quarters of her abdomen. *Id.* He testified that the victim told him that her boyfriend had poured rubbing alcohol on her and ignited her and that she had rolled on the ground to extinguish the fire. The doctor opined that the burns, covering 60 percent of the victim's body, were the "most painful burns you can have" and that the victim was at "a high risk of . . . dying." *Id.*

Officers testified at the petitioner's trial regarding their attempts to apprehend the petitioner; they detailed a high-speed automobile chase followed by foot pursuit through a wooded area. *Id.*, slip op. at 4.

The victim testified that the petitioner, who was the father of her two children and from whom she was estranged in November 2007, came to her apartment at about 5:00 a.m. on November 24, 2007. They argued, and the petitioner threatened to, and did, pour rubbing alcohol on her and ignited the alcohol with a lighter. *Id.* Her shirt "blazed up" and she ran outside to roll in the grass while the petitioner stood on the porch before driving away in his car. The victim testified that she was hospitalized until March 2, 2008, and that she still suffered from her burns. *Id.*

The petitioner testified at his trial that he had socialized with the victim on the evening of November 23, 2007, and that following an argument about her not loving him anymore, "'[b]efore [he] knew it, [he] grabbed the alcohol[, and the] next thing [he knew] she was on fire.'" *Id.*, slip op. at 5. He testified that he tried to extinguish the flames with a blanket. The petitioner maintained that he did not intend to harm the victim. *Id.* On cross-examination, the petitioner testified that he caused the injuries to the victim and admitted that he had evaded arrest; however, he denied telling an officer that he wanted the victim to feel

-2-

the same pain that he had felt from their breakup. *Id.*

During the State's rebuttal evidence, a police investigator testified that, during a pretrial interview, the petitioner stated, "'I should have just left, but my heart was hurting so bad I wanted her to feel the pain that I was feeling because she won't let me go.'" *Id.*

At the post-conviction evidentiary hearing, the petitioner testified that his trial counsel only conferred with him "[m]aybe three or four times" before trial. The petitioner admitted that, despite his trial counsel's communicating with him inadequately, the petitioner had a full understanding of the procedure at trial. The petitioner claimed that, although he saw the discovery materials provided by the State, he never saw any statement given by the victim.

The petitioner testified that trial counsel failed to obtain the assistance of an arson expert, and he claimed that such an expert would have opined that the flames were supported by the "chemicals from when [the victim] got her hair done more than the [rubbing] alcohol." The petitioner also opined that trial counsel should have asked the trial court to instruct the jury on arson and reckless burning as lesser included offenses of aggravated arson.

The petitioner, who was 36 years old at the time of the evidentiary hearing testified that he had struggled since he was "19 or 20" years old with addiction to alcohol and cocaine. He testified that he had sought treatment through at least five different rehabilitation programs, four of which were inpatient facilities. He stated that trial counsel was aware of this history but that counsel did not attempt to have the petitioner evaluated for mental debility. The petitioner opined that his subjugation to drugs would have shown that he "wasn't in [his] right state of mind" at the time of the offenses. He testified that he had used cocaine, marijuana, and alcohol and that he was "highly intoxicated" at the time of the attack on the victim. He stated that trial counsel did not want to use the intoxication or impairment as "an excuse." The petitioner maintained that the arresting officer could have testified to the petitioner's state of intoxication despite that the officer testified at trial that he did not recall whether the petitioner appeared to be intoxicated. The petitioner claimed that this officer had told some of the petitioner's relatives that the petitioner had "reeked of alcohol and . . . probably [didn't] realize what [he] had done." The petitioner did not know whether trial counsel had been informed of the officer's inconsistent out-of-court statement. In summary, the petitioner testified that counsel "didn't have no [sic] defense."

The petitioner testified that trial counsel had only planned to use one witness – a character witness – who ultimately was not put on the witness stand. The petitioner admitted that he agreed to release the witness. The petitioner also admitted that trial

counsel's failure to obtain a preliminary hearing transcript probably had no bearing on the outcome of his trial.

The petitioner testified that trial counsel did not seek discretionary review of the direct appeal opinion in the supreme court. He said, "I thought he was gonna do it, but he said he didn't . . . ." Nevertheless, the petitioner was aware that counsel had moved to withdraw from the case after the filing of this court's opinion and that the petitioner had 60 days from the date of filing in which to apply to the supreme court. He testified that he "didn't have the funds to hire an attorney, and [he] had to struggle to get somebody to help to do the petition on post-conviction" because he "didn't understand how to do it" himself.

On cross-examination, the petitioner opined that his trial counsel performed inadequately because trial counsel "got scared" of the prosecutor and "sold [him] out." He further maintained that counsel failed to investigate "the fact of the situation of [the victim's] infidelity." The petitioner testified that he did not have the opportunity to tell the jury the details of the victim's "cheating on [him]." The petitioner admitted that he testified before the jury that the attack on the victim "was a crime of passion." The petitioner further admitted "being at [the victim's] apartment and throwing alcohol on her and setting her on fire." Still, he maintained, he lacked the intent to commit arson. He further denied that igniting the alcohol on the victim's body was arson.

The petitioner was the sole witness presented at the evidentiary hearing. Following his testimony, the State moved to deny the petition for post-conviction relief. The post-conviction court, after hearing argument, ruled that the petitioner had "not established by clear and convincing evidence any basis for the granting of . . . post-conviction" relief.

On appeal, the petitioner claims that his trial counsel was ineffective for failing to (1) seek the appointment of an arson expert to investigate the act of arson, (2) obtain all copies of the victim's statements prior to trial, (3) present evidence concerning the petitioner's alcohol and drug impairment and/or seek a mental evaluation of the petitioner, (4) seek jury instructions on the lesser included offenses of aggravated arson, (5) attack the multiplicity of the charges in the indictment, and (6) seek discretionary review with the supreme court on direct appeal. The State argues that, because the petitioner failed to present clear and convincing evidence to establish his claim of ineffective assistance of counsel, the trial court correctly denied relief.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. *See* T.C.A. § 40-30-110(f) (2006). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them.

*Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are mixed questions of law and fact. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

First, the petitioner contends that trial counsel performed deficiently by failing to obtain an arson expert to show that much of the victim's injuries emanated from chemicals on the victim's recently processed hair, rather than the rubbing alcohol doused on her by the petitioner. At the outset, we note that the petitioner offered nothing at the evidentiary hearing to suggest a need for an arson expert other than his own speculation that the fire emanated from chemicals on the victim's hair. Furthermore, the petitioner admitted at trial and at the post-conviction evidentiary hearing to throwing the rubbing alcohol on the victim and

igniting her alcohol-soaked clothing with his lighter. Likewise, the petitioner failed to present any expert testimony at the evidentiary hearing in support of this alleged deficiency. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (stating that a post-conviction petitioner fails to shoulder his burden of proving ineffective assistance of counsel in failing to investigate the case or to call certain witnesses when the petitioner, in the evidentiary hearing, fails to present proof of the prejudicial results of lack of investigation or fails to call the claimed witnesses). Accordingly, we conclude that the petitioner failed to establish by clear and convincing evidence that trial counsel was deficient on this point or that the petitioner was prejudiced by the lack of the assistance of an arson expert at trial.

Second, the petitioner is also aggrieved by trial counsel's failure to obtain a copy of the victim's statement via pretrial discovery. In the post-conviction hearing, the petitioner agreed that his attorney availed to the petitioner the discovery materials that the attorney had obtained, but he complains that no statement of the victim was included in the materials. Notably, the petitioner was not entitled to discover any pretrial statement of the victim. *See* Tenn. R. Crim. P. 16(a)(2) (stating that a defendant is not entitled to discover "statements made by state witnesses or prospective state witnesses"). In any event, the petitioner failed to establish that any pretrial statement of the victim existed. Accordingly, we determine that the petitioner cannot establish any deficiency with respect to counsel's performance in this regard.

Third, the petitioner also claims that trial counsel failed to present a defense of intoxication at trial and, likewise, failed to seek a mental evaluation of the defendant prior to trial. The petitioner's testimony at the evidentiary hearing, however, belies his claim that he was so impaired that he could not have formed the requisite intent to commit the charged offenses. Moreover, in the post-conviction evidentiary hearing, he failed to present evidence of either his history of addiction, his impairment at the time of the offenses, or how the utilization of a mental evaluation could have availed him a defense. Thus, he failed to establish either deficient performance of counsel or prejudice. *See Black*, 794 S.W.2d at 757.

Fourth, the petitioner asserts that his trial counsel should have moved the court to instruct the jury on reckless burning as a lesser included offense of aggravated arson. The only evidence presented relative to this claim is the petitioner's conclusory allegation that trial counsel should have requested lesser included offense instructions. Because no jury instructions were exhibited to the evidentiary hearing, the record contains no evidence that the trial court did or did not instruct on lesser included offenses to each charge. Indeed, the absence of trial counsel's testimony at the evidentiary hearing hinders our review of this issue. Consequently, no testimony addresses trial counsel's knowledge of the jury instruction issue and his strategic decisions, if any, concerning the jury instructions. Furthermore, we determine some ambiguity in the post-conviction court's statements concerning the absence

of any lesser included instructions. In fact, the post-conviction court, who also presided over the petitioner's trial, commented that "I charged what I felt was the proper . . . lesser included offenses under the law." Thus, it appears that the trial court did, in fact, instruct on lesser included offenses, although the record is silent as to what specific lesser included offenses were charged by the trial court.[1] The petitioner was obliged to present evidence to establish his claim of counsel's ineffective assistance. *See Gdongalay P. Berry v. State*, No. M2010-01136-CCA-R3-PD, slip op. at 6 (Tenn. Crim. App., Nashville, Nov. 4, 2011) (ruling that "[t]he petitioner's failure to present any proof at the evidentiary hearing . . . necessarily means that the petitioner failed to prove any of these grounds by clear and convincing evidence"), *perm. app. denied* (Tenn. 2012). Accordingly, we conclude that the petitioner failed to establish his claim concerning lesser included offense instructions.

Next, the petitioner posits that his indictment alleged two offenses – attempted second degree murder and aggravated arson – that reflect multiplicity and violate double jeopardy safeguards. He complains that his trial counsel did not seek to dismiss one of the charges. We discern, however, that the claim of a double jeopardy bar via duplicity was presented to and addressed by this court on direct appeal. *See Courtenay Darrell Robertson*, slip op. at 9. As such, the issue of double jeopardy was previously determined. *See* T.C.A. § 40-30-106(f), (h). The petitioner is bound by that adjudication, and his claim of ineffective assistance of counsel fails because no prejudice has been – or can be – shown.

Finally, the petitioner complains that this court's ruling on the multiplicity issue was one of first impression and that it merited an appeal to the supreme court. We note, and the petitioner concedes, that trial counsel fully complied with the provisions of Tennessee Supreme Court Rule 14 in withdrawing from the case following the filing of the opinion of this court. In such a situation, trial counsel is not further obliged to represent the petitioner. Also, the petitioner had the opportunity to file a *pro se* application for discretionary review in the supreme court, but he declined to do so. Likewise, we decline to conclude that counsel committed ineffective assistance regarding this allegation.

Having determined that the record supports the post-conviction court's ruling that the petitioner failed to establish his allegations of ineffective assistance of counsel by clear and convincing evidence, we affirm the post-conviction court's order denying relief.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[1] The direct appeal record in this particular case, of which this court may take judicial notice, contains neither a copy in the technical record nor a transcript of the jury instructions.